**'08 CIV 7506**

Harris N. Cogan (HC 9313)
Inbal Paz (IP 2960)
Blank Rome LLP
405 Lexington Avenue
New York, New York 10174
Tel: (212) 885-5000
Fax: (212) 885-5002
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GRAFF DIAMONDS (NEW YORK), INC.,

                                    Plaintiff,

                    -against-

SCOTT NEDERLANDER,

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiff Graff Diamonds (New York) Inc., by its attorneys Blank Rome LLP, for its

Complaint alleges as follows:

## NATURE OF THE ACTION

        1.      This is an action for breach of contract, account stated, and fraud arising

from Defendant Scott Nederlander's ("Nederlander") refusal to either return, or pay for, four

pieces of diamond jewelry he purchased from Plaintiff Graff Diamonds (U.S.A.) Inc., now

known as Graff Diamonds (New York), Inc. ("Graff"). Nederlander has not contested that he

owes Graff payment for these items, and has, on more than one occasion, issued checks to Graff,

as payment, drawn on bank accounts with insufficient funds on deposit, in violation of U.C.C.

Article 3.

## PARTIES

2.     Graff Diamonds (New York), Inc. ("Graff") is a Delaware Corporation, licensed to do business in New York, with its principal place of business at 721 Madison Avenue, New York, New York.

3.     Graff is a world-renowned seller of rare jewels, including diamonds.

4.     Upon information and belief, defendant Scott Nederlander ("Nederlander"), is a California resident, with a principal place of residence at 911 Bayside Drive, Newport Beach, California 92660.

## JURISDICTION AND VENUE

5.     Jurisdiction of this Court is proper, pursuant to 28 U.S.C. § 1332, based upon complete diversity of citizenship of the parties. The amount in controversy exceeds seventy-five thousand ($75,000) dollars, exclusive of interest and costs.

6.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a) in that a substantial part of the events giving rise to the claim occurred in this District.

## THE FACTS

The Purchase of the Jewelry

7.     On or around February 10, 2004, Nederlander visited the Graff store located at 721 Madison Avenue in New York City. While there, Nederlander executed a Consignment Memorandum with Graff for the purchase of two bracelets, identified as items USGB 2612 and GB 2846, and valued at $64,000 and $91,000, respectively.

8.     At the time of Nederlander's purchase, the retail price for USGB 2612 was $48,000 and for GB 2846 was $68,000. The present-day retail value of USGB 2612 is approximately $57,500, and for USGB 2846 is approximately $87,500.

-2-

9.      Upon information and belief, the two bracelets were intended as gifts for

Nederlander's then-girlfriend, Christin Sims ("Sims").

10.     The Consignment Memorandum executed by Nederlander and Eduard van

der Geest ("van der Geest"), on behalf of Graff, stated in relevant part that:

> The goods described and valued as below are delivered to you for
> EXAMINATION and INSPECTION ONLY and are the property
> of Graff Diamonds (U.S.A.) Inc. The merchandise is subject to
> their order and shall be returned to them on demand.    Such
> merchandise until returned to them and actually received are at
> your risk from all hazards.  NO RIGHT OR POWER IS GIVEN
> TO   YOU   TO   SELL,   PLEDGE,   HYPOTHECATE   OR
> OTHERWISE DEPOSE OF THIS MERCHANDISE regardless of
> prior transactions. A sale of this merchandise can only be effected
> and title will pass only if, as and when the said Graff Diamonds
> (U.S.A.) Inc. shall agree to such sale and a bill of sale rendered
> thereof.

A copy of the Consignment Memorandum, dated February 10, 2004, is annexed to this

Complaint as Exhibit A (emphasis in original).

11.     On or about February 11, 2004, Graff delivered to Nederlander items

USGB 2612 and GB 2846.

12.     On or around March 25, 2004, Nederlander contacted Graff in New York

and purchased ten additional pieces of jewelry from Graff.  Graff billed Nederlander for these ten

pieces of jewelry under Invoice 11220 for $1,250,000, and Invoice 11265 for $785,000. Copies

of Invoice 11220 and Invoice 11265 are annexed to this Complaint as Exhibit B.

13.     Additionally, at the specific request of Nederlander, a special safe was

installed at Sim's house.  The cost to Graff for this installation was $3,500.

14.     To date, Nederlander has not paid Graff for installation of the safe.

-3-

The Bounced Checks

15.     Beginning in mid-April 2004, Nederlander purported to settle the outstanding invoices sent to him by Graff.

16.     On April 16, 2004, Nederlander issued Graff a check on his account with Standard Federal Bank N.A. in the amount of $750,000. On or about April 26, 2004, the check was returned for insufficient funds. On or about May 6, 2004, Graff's bank attempted to redeposit Nederlander's $750,000 check, but it was returned again for insufficient funds.

17.     On April 22, 2004, Nederlander issued Graff a check on his account with Bank of America in the amount of $250,000. On or about April 26, 2004, the check was returned for insufficient funds. On or about May 3, 2004, Graff's bank attempted to redeposit Nederlander's $250,000 check, but it was returned again for insufficient funds.

18.     Upon information and belief, on or around April 22, 2004, Nederlander arranged for Michael W. Smith ("Smith") to issue a check on Nederlander's behalf from an account with North Fork Bank in the amount of $35,000.

19.     Graff presented Smith's check to its bank in New York, and funds were successfully paid.

20.     On May 6, 2004, Nederlander issued Graff another check on his account with Bank of America in the amount of $165,000. Graff presented the check to its bank in New York, but it was returned for insufficient funds.

21.     On May 21, 2004, Nederlander issued a check to Graff on his account with The Mechanics Bank in the amount of $1,100,000. Graff presented the check to its bank in New York, but it was returned for insufficient funds.

22.     Copies of all of the returned checks and the corresponding notices of

insufficient funds are annexed hereto as Exhibit C.

23.    Upon information and belief, on or around May 21, 2004, Nederlander arranged for Friman & Stein, Inc. ("Friman"), located at 589 Fifth Ave, Suite 709, New York, New York issue a check on his behalf in the amount of $42,500.

24.    Graff presented the Friman check to its bank in New York on or around May 24, 2004, and funds were successfully paid.

Attempts to Recover the Jewelry

25.    After Nederlander failed to pay for any of the ten items delivered to him from New York, Graff undertook steps to recover the jewelry. Nederlander arranged for Graff to recover the jewelry from Sims' home. Although Graff recovered certain of the jewelry, two of the ten jewelry items were not recovered, and Nederlander claimed that Sims had lost them. Specifically, Nederlander failed to return item USGB 3208, which consisted of two heart-shape diamonds sold in a set, and item USGB 3209, which was a bracelet with a heart-shape charm. Graff re-billed Nederlander separately for these two items on Invoice 11396 in the amount of $103,000. A copy of Invoice 11396, dated July 8, 2004, is annexed to this Complaint as Exhibit D. The present-day combined retail price for USGB 3208 and USGB 3209 is approximately $150,000.

26.    Nederlander also failed to return USGB 2612 and GB 2846, and claimed they were lost. Therefore, Graff issued Nederlander an invoice (Invoice 50500) for the total purchase price of these two items. A copy of Invoice 50500, dated August 10, 2004, is annexed to this Complaint as Exhibit E.

27.    Graff has contacted Nederlander on a number of occasions in an attempt to collect payment on the outstanding invoices covering the four items.

28.    Nederlander has not objected to the invoices he received, and has made repeated broken promises that he would  make payment.

29.    Nederlander has still not paid for the four items purchased from Graff.

## AS AND FOR A FIRST CAUSE OF ACTION

### (BREACH OF CONTRACT)

30.    Graff repeats and realleges the allegations made in paragraphs 1 through 29 as if fully set forth herein.

31.    Graff and Nederlander entered into an agreement for the purchase of certain items of jewelry.  Under the terms of this agreement, Nederlander could either return the jewelry upon demand by Graff *or* pay for title to the jewelry upon receipt of a bill of sale from Graff.

32.    Despite Graff's repeated demands for items USGB 3208, USGB 3209, GB 2846, and USGB 2612, Nederlander has failed to return the items.

33.    Upon Nederlander's failure to return the items as provided for in the parties' agreement, Graff rendered Invoice 11396 and Invoice 50500 for payment on the four outstanding items.

34.    Nederlander has failed to make the $219,000 payment due and owing under Invoice 11396 and Invoice 50500.

35.    Further, at Nederlander's request, Graff incurred an expense of $3,500 for installation of a custom-safe in the home of Nederlander's girlfriend, Sims, for purposes of securing the jewelry purchased from Graff.

36.    Nederlander has failed to remit payment for the installation of the safe.

37.    Accordingly, Graff has been damaged in amount not less than $222,500,

exclusive of interest.

## AS AND FOR A SECOND CAUSE OF ACTION

## (ACCOUNT STATED)

38.    Graff repeats and realleges the allegations made in paragraphs 1 through 37 as if fully set forth herein.

39.    Graff issued to Nederlander itemized invoices for those items he failed to return upon Graff's demand, and which Graff was unable to recover.

40.    The amount of Nederlander's indebtedness to Graff totals $219,000, exclusive of interest.

41.    Nederlander never objected to the invoices issued by Graff. Indeed, on six separate occasions, Nederlander purported to tender payment by sending to Graff checks covering various portions of the amount due and owing at the time. All but two of these checks were rejected by Graff's bank for insufficiency of funds on deposit.

42.    By his actions, Nederlander has assented to the amount due and owing to Graff for the missing items.

43.    Accordingly, an account has been stated in the amount of $219,000, exclusive of interest.

## AS AND FOR A THIRD CAUSE OF ACTION

## (FRAUD)

44.    Graff repeats and realleges the allegations made in paragraphs 1 through 43 as if fully set forth herein.

45.    Graff issued to Nederlander invoices for those items of jewelry he failed to return upon Graff's demand.

-7-

46.     Nederlander had delivered to Graff in New York four checks that, upon information and belief, were drawn on accounts that Nederlander knew had insufficient funds to cover the amount of the checks.

47.     Upon information and belief, Nederlander sent the payments with the intention that Graff rely on those checks as satisfaction of the amount due and owing to Graff at the time.

48.     After Nederlander's fraudulent payments, Graff was unable to recover four of the ten items of jewelry (i.e., USGB 3208, USGB 3209, GB 2846, and USGB 2612) that Nederlander had purchased from Graff.

49.     Since the time Nederlander purchased the outstanding pieces from Graff in New York, the value of these items has appreciated by at least 35%. As such, the present-day retail value of the four items Nederlander has kept is now $295,000.

50.     As a result of Nederlander's fraudulent actions, Graff has lost the opportunity to sell items USGB 3208, USGB 3209, GB 2846, and USGB 2612 at the appreciated retail value.

51.     Accordingly, Graff has been damaged in an amount not less than $295,000, plus punitive damages in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (VIOLATION OF U.C.C. ARTICLE 3)

52.     Graff repeats and realleges the allegations made in paragraphs 1 through 51 as if fully set forth herein.

53.     Upon information and belief, Nederlander knowingly indorsed, and had delivered to Graff in New York, four personal checks drawn on insufficient funds. (*See* Ex. C.)

54.     By indorsing and delivering the checks to Graff, Nederlander was

representing that he had sufficient funds to honor the payments being made.

55.     Graff presented each of Nederlander's checks to its bank.

56.     All four checks indorsed by Nederlander were dishonored due to

insufficient funds on deposit in Nederlander's various bank accounts.

57.     Nederlander was informed that his indorsed checks were dishonored.

58.     Upon learning that the checks were dishonored, Graff managed to recover

all but four of the items that Nederlander had purchased using the dishonored checks.

59.     Accordingly, Nederlander is obligated to pay to Graff $219,000, exclusive

of interest, which represents the unsatisfied portion of the dishonored checks.

**WHEREFORE,** Plaintiff requests judgment against Defendant for the relief sought in this Complaint, including:

   a)   on Plaintiff's First Claim, for damages totaling $222,500, plus interest;

   b)   on Plaintiff's Second Claim, awarding $219,000, plus interest;

   c)   on Plaintiff's Third Claim, for damages totaling $295,000, plus punitive damages in an amount to be determined at trial;

   d)   on Plaintiff's Fourth Claim, awarding $219,000, plus interest; and

   e)   such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       August 25, 2008

                              **BLANK ROME LLP**
                              Attorneys for Plaintiff

                              By: _____
                                  Harris N. Cogan (HC 9313)
                                  Inbal Paz (IP 2960)
                              The Chrysler Building
                              405 Lexington Avenue
                              New York, New York 10174
                              (212) 885-5000